No. 7936.

CINCINNATI, WABASH AND MICHIGAN RAILROAD COMPANY
v. PETERS.

NEGLIGENCE.—*Pleading.*—*Railroad Company.*—A complaint against a railroad company for personal injury to a passenger, which does not aver generally that the plaintiff was without fault, and alleges the facts to be that at the station the train slackened speed so that the plaintiff could have alighted without damage if there had been a platform; that it was dark, windy and raining, and the plaintiff had never been at the station; that the conductor informed him of arrival at the place and ordered him to alight, and, relying entirely on this order, he stepped off as directed, and by reason of there being no platform, as he supposed there was, he fell under the cars and was injured, is bad on demurrer, because it does not show that the plaintiff was free from contributory negligence. ELLIOTT, C. J., dissented.

From the Madison Circuit Court.

*C. Cowgill, H. B. Shiveley* and *C. E. Cowgill,* for appellant.
*J. W. Kern* and *J. W. Sansberry,* for appellee.

Cincinnati, Wabash and Michigan Railroad Company *v.* Peters.

FRANKLIN, C.—Appellee sued appellant for injuries received while travelling as a passenger on appellant's railroad. The complaint is in four paragraphs. A demurrer was sustained to the first, and a separate demurrer overruled to each of the second, third and fourth paragraphs. Answer filed in three paragraphs; reply in denial to second and third, the first being a denial. Trial by jury, verdict for appellee, motion for a new trial overruled, and judgment for appellee for $7,500.

The first three errors assigned in this court are the overruling of the separate demurrers to the second, third and fourth paragraphs of the complaint.

The third paragraph of the complaint reads as follows:

3d. And for a third paragraph of complaint and further cause of action, plaintiff, James E. Peters, complains of the Cincinnati, Wabash and Michigan Railroad Company, and complaining says, that the defendant is a corporation duly organized under the laws of the State of Indiana, and is and was at the time of the occurring of the acts hereinafter complained of; that said defendant is running and operating a railroad, passing through and into the counties of Madison, Grant, Wabash, Kosciusko and Elkhart, and, as such corporation, engaged in carrying passengers and transporting freight; that on the 19th day of October, 1875, this plaintiff took passage on said railroad at the city of Wabash, Indiana, in the county of Wabash, for the village of Milford, on the line of said road; that, on arriving at said Milford, to which point he had paid his fare, as demanded, he concluded to remain on said train until the same arrived at Arnold's Station, on the line of said road, in the county of Elkhart aforesaid, being nearer his point of destination, which was some distance from such railroad; that he paid to the conductor having charge of such train, and then and there being in defendant's employ in such capacity, the regular fare to said Arnold's Station, he, the said conductor, receiving the same, and undertaking in behalf of defendant to carry and safely deliver him at said point; that the agents of said company, having charge

of said train, not mindful of their duty and the obligation of said company to so carry and deliver him, wholly neglected and refused to do so; that, on arriving at Arnold's Station aforesaid, the said train slackened its speed, so that plaintiff could have with safety and without damage alighted therefrom, had there been constructed at said station a platform or other suitable place prepared for passengers to step upon when leaving the trains of said defendant.

Plaintiff avers that when said train arrived at said place it was dark, the wind was blowing and the rain falling; that plaintiff had never before been to said Arnold's Station; that on arriving at said station, the train having slackened its speed as aforesaid, the conductor aforesaid informed plaintiff that they had now arrived at said Arnold's Station, and ordered him to alight; that plaintiff, in pursuance of the order of such conductor, and entirely relying on his instruction, stepped off said train as directed, expecting and believing that a platform or other suitable place had been prepared for the reception of passengers; that, in fact, no platform or other place had been prepared by defendant for such purpose; but that the place where plaintiff was instructed to step off, and did get off said train, was a rough, uneven piece of ground, sloping from such railroad track to a ditch, and wholly unsuitable for the reception of passengers; that plaintiff stepped off such train on such ground, and by reason of the defendant having negligently failed to provide a platform, or suitable place, at such station for the reception of passengers, and of such ground being of an uneven surface, sloping, and unsuitable for the reception of passengers, he fell, and was thrown under such train, which passed on and over his right leg, crushing the same to such an extent as to necessitate its amputation; that such leg, by reason of the act and occurrence aforesaid, was amputated; that plaintiff became by reason thereof, and was sick and sore for a long period of time, to wit, for the space of three months; that he laid out and expended a large sum of money in and about the curing and healing of him-

self, to wit, the sum of five hundred dollars; that on account thereof he was compelled to and did abandon his occupation, that of house carpenter, to his great injury and damage; that he is maimed for life, and rendered incapable of gaining a livelihood. By reason of which acts of defendant heretofore complained of, plaintiff avers that he has been damaged in the sum of ten thousand dollars, for which amount he demands judgment, and all other proper relief.

This action is based upon an injury arising from an alleged negligence of the defendant. Negligence is a mixed question of law and facts; when the facts are agreed to, it becomes a question of law. In the case of *Newhouse* v. *Miller*, 35 Ind. 463-6, the following language is used: "It is a well settled doctrine of the law that the plaintiff can not recover in such a case, if it appears that by the want of ordinary care or prudence on his part, he directly contributed to the injury; or, in other words, if by the exercise of ordinary care and prudence, he might have avoided the injury. Where negligence is the issue, it must be a case of unmixed negligence to justify a recovery, and if both parties by their negligence immediately contributed to produce the injury, neither can recover. When the plaintiff is the proximate cause of the injury, he can not recover." See the authorities therein collected and cited.

"Negligence has been defined to 'consist in the omitting to do something that a reasonable man would do, or the doing something that a reasonable man would not do.'" *Howe* v. *Young*, 16 Ind. 312.

In the case at bar, according to the allegations in the complaint, did the railroad company do anything that a reasonably prudent person would not have done, or fail to do any thing that a reasonably prudent person would have done?

The only act of negligence complained of by the plaintiff was the failure of the defendant to have had prepared a platform or other suitable place for the reception of passengers; is this, as connected with the other allegations of the paragraph, *per se* negligence in law?

There is no description as to what kind of station this was; as to whether it was a general public station at which trains regularly stopped for the reception and discharge of passengers, or a mere way flag station at some cross-roads, where trains only stopped when flagged for the accommodation of special passengers, this paragraph of the complaint is entirely silent.   At a mere way or flag station, where trains do not regularly stop for the reception and discharge of passengers, and only stop when they are flagged, or to discharge a special passenger, a passenger need not expect or rely upon the company's having furnished a platform or other convenient place for the reception and discharge of passengers, although that is frequently done when the road has been finished and placed in complete running order.

It is very doubtful whether the paragraph sufficiently charges negligence in the defendant.   But without deciding this question, we think there is a more formidable objection to the paragraph.   It in no way rebuts contributory negligence in the plaintiff.   It nowhere alleges that he was without fault or negligence; nor do we think the facts stated sufficiently show that he was without fault or negligence.

The rule of pleading in such cases is, where the plaintiff charges the defendant with negligence, to make a good complaint, he must also aver that he was without fault or negligence, or state such facts as will clearly show that he was without fault or negligence in the premises.   If, however, there is an averment in the complaint, that the plaintiff was without fault or negligence, and the facts stated clearly show that he was not without fault or negligence, a demurrer will be sustained to the complaint.   And if there is no averment in the complaint of that kind, and the facts stated do not clearly show that the plaintiff was without fault or negligence, a demurrer will also be sustained to the complaint.   *Evansville, etc., R. R. Co.* v. *Dexter*, 24 Ind. 411.

In the case at bar, there is no such averment in the complaint, and the question is, Do the facts stated clearly show

that the plaintiff was without fault or negligence? The plaintiff alleges that he had never been at Arnold's Station before; that when the train arrived there it was dark, the wind blowing and the rain falling; that the train slackened its speed so that he could with safety have alighted therefrom, had there been a suitable platform or place to receive him; that the conductor informed him that they had now arrived at Arnold's Station, and ordered him to alight; that he, in pursuance of such order, and entirely relying on his instruction, stepped off said train as directed; that, by reason of the defendant having negligently failed to provide a suitable place for his reception, he fell and was thrown under the train.

Plaintiff was not an infant, imbecile or lunatic, but a man of mature age, a house carpenter by occupation, and, nothing being shown to the contrary, he is presumed to have been in the possession, and ought to have been in the proper use, of all his ordinary physical senses; he could see, feel and hear; these senses were given him to enable him to act properly, and, having such capacity, he is to be held responsible for his actions. And although the night was dark and he may not have been able to see well, and the storm may have roared so that he could not hear well, there is nothing alleged showing that he was so benumbed that he had not the most acute feeling, and well knew that the train was yet in motion and had not come to a complete stop.

In the case of *Frenzel* v. *Miller*, 37 Ind. 1, p. 17, the following language is used in relation to frauds, and we do not see but it is equally applicable, in a case of this kind: "If a party blindly trusts, where he should not, and closes his eyes, where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, *volenti non fit injuria.*" The same maxim would appropriately apply wherever a party stupidly yields any or all of his ordinary physical senses to the will and control of another, when ordinary prudence would have required that he should have exercised them himself.

In the case of *Mackey* v. *The New York Central R. R. Co.*,

27 Barb. 528, it was held that the plaintiff "was bound to exercise care and diligence and foresight *in proportion to the danger to be avoided,* and the fatal consequences involved in his neglect." The same principle was approved by this court, in the case of *The Toledo, etc., R. W. Co.* v. *Goddard,* 25 Ind. 185, p. 199. Hence, the darker the night, the more severe the storm, and the greater the ignorance of the plaintiff of that particular locality, the greater care and prudence should have been exercised by him in alighting from the train. He does not allege that he had been informed that any platform or other suitable place had been prepared just at that point, for his convenient reception, and without making any enquiry as to what would become of him, he voluntarily takes a leap into the dark without knowing whether he will land over high trestle-work into a deep gulf below, or upon a safe platform prepared for his reception. Could a man, possessing his physical senses and sane in mind, be said to have used due care and ordinary diligence, who had thus rashly acted?

But it is alleged that the conductor said to him, that they had arrived at Arnold's Station, and ordered him to alight. Relying entirely on such direction, he stepped off. Without hesitating, thinking or waiting for the train to stop, he immediately complied with the request of the conductor. Instead of such wilfully blind obedience, we think this information and direction of the conductor was intended, and ought to have been considered by appellee as a notice and warning to him to get ready to leave the train so soon as it should stop, and not that he should instantaneously jump off while it was yet in motion.

In the case of *The Jeffersonville R. R. Co.* v. *Hendricks' Adm'r,* 26 Ind. 228, p. 232, the court uses the following language: "On the other hand, the deceased in leaving the train was bound to exercise ordinary care and prudence to avoid injury. If the train had not stopped at the station, so as to enable the deceased to get off, and had carried her beyond her destination, the company would have been liable in damages.

But the fact that the train was passing the station without stopping, could not justify her in attempting to get off by leaping from it. It is the duty of those having charge of the train, in such cases, to stop it, to enable passengers to leave it safely, and it is carelessness in passengers to attempt to leave the train whilst it is in motion." This case was again before this court, and reported in 41 Ind. 48, and, in the second opinion, the above last general expression was so modified as to declare that it was not carelessness in a passenger to leave the train when it was moving so slowly that it was safe for him to do so.

In the case of *The Jeffersonville Railroad Co.* v. *Swift*, 26 Ind. 459, the question in relation to the conductor directing the passenger to jump off while the train was in motion, is discussed. There, the train was passing the platform at the depot, the passenger was standing on the platform ready to jump off, and had been informed by another passenger that the train would not stop there. In this attitude, he remarked to the conductor that he could not make that risk. The conductor responded that "You could if you would," or "You might if you would." In this case the court says: "The plaintiff was a man of mature years, and we must presume of at least common understanding. He claimed to believe that the train was running at the time at a speed of at least ten miles to the hour, and under these circumstances he must have known that such a leap was at least hazardous, too much so to require a practical knowledge to teach him the fact. The sense of sight would be sufficient to satisfy any one of sane mind of the danger in such an act, and he can not be permitted to claim that his own misconduct and want of care did not contribute to the injury resulting from his own voluntary act, by saying that he relied on the assurance of the conductor that it was safe so to leap. * * * And without any other motive for the act than the fear of being carried beyond the station where he desired to stop; a fact that did not justify him in incurring the danger. Under such a state of

facts, he was not compelled to the act, and, therefore, did it voluntarily. It was an extremely imprudent one, and fraught with dangerous consequences, and was the direct and immediate cause of the injury. Reasonable care required that he should have remained on the car, and thereby have avoided the injury, and therefore he could not recover under such circumstances." A distinction may be drawn between that case and the one at bar. In that case the passenger had been informed that the train would not stop at the depot. In this case he had been informed that it would, and that he had every reason to believe, from the slackening of its speed, that it would so stop. In that case the conductor assured him there was no danger; in this case the conductor directed him to alight. But we do not think these distinctions materially change the principle. The foregoing opinion then concludes as follows: "A passenger is not bound to leave the train when it is motion at the command of the conductor. He may disobey such command with impunity, and may resist an effort made to enforce it; but when no threat of violent expulsion is made, and the passenger is still left in the free exercise of his will, and seeing and knowing the peril of the act, leaps from the train at the command of the conductor, and is injured, can it be said that his own unnecessary and imprudent conduct has not contributed directly to the injury? We do not decide the question." Neither do we in this case.

And as this paragraph of the complaint contains no direct averment that the plaintiff was without fault or negligence, we do not think the allegations of the paragraph sufficiently show that fact without this averment. Our conclusion on this point is not in conflict, but is in entire harmony, with the decision of this court in *The Pennsylvania Co.* v. *Hoagland*, 78 Ind. 203. In that case it was said by HOWK, J., speaking for the court: "The conductor and brakemen, in charge of the passenger train, were the agents and representatives of the appellant; and the said Hattie E., as a passenger under their charge, had the right to rely implicitly upon their statements to

her, and in her hearing, that the next station or stopping-place of the train would be Plymouth, her place of destination." The difference between the case cited and the case at bar, upon the point under consideration, is so wide and marked, that it will readily suggest itself, and need not be pointed out.

The court erred in overruling the demurrer to this paragraph of the complaint; it should have been sustained.

As to the second paragraph, it a little more specifically sets out the facts, and alleges, when they arrived at Arnold's Station, the conductor informed him that they were there, and for him to follow the conductor and he would light him off of the train; he followed the conductor to the platform, when the conductor held his lantern and told him that the train had stopped, and for him to step off; that, in obedience to the directions of the conductor, he stepped off of the car as carefully as he could, and without any fault or negligence on his part, he was thrown under the car and run over.

The fourth paragraph alleges that when they arrived at Arnold's Station none of defendant's agents lighted him off of the train, although it was very dark; that the train had so far checked its speed, that he could have safely stepped therefrom, but before he had time to do so the train suddenly started up at a faster speed, and, without any fault or negligence on his part, jerked and threw him under the car and the wheels thereof ran over him.

Each of these paragraphs contains the averment that the plaintiff was without fault or negligence; and we do not think the facts alleged clearly show that he was not without fault or negligence. Therefore, the questions of negligence and contributory negligence ought to be left to the jury on the trial. *The City of Fort Wayne* v. *De Witt*, 47 Ind. 391. They each constituted sufficient causes of action, and there was no error in overruling the demurrers to them.

There are a number of other questions raised and discussed by counsel in the case. But, as the judgment must be re-

versed for the error in overruling the demurrer to the third paragraph of the complaint, and these questions may not arise upon a subsequent trial of the cause, we deem it unnecessary to extend this opinion by an investigation and decision of them.

The judgment below ought to be reversed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment below be and it is hereby in all things reversed, at the costs of appellee, and that the cause be remanded with instructions to the court below to sustain the demurrer to the third paragraph of the complaint, and for further proceedings.

### DISSENTING OPINIONS.

ELLIOTT, C. J.—I regard the third paragraph of the complaint as good and am therefore compelled to dissent.

It is sufficient to state such facts as show that the plaintiff in an action for injuries resulting from negligence was free from fault. The complaint does this. Where facts are stated, there is no necessity in the world for the formal allegation that the plaintiff was without fault.

It is the duty of railroad companies to provide, at regular passenger stations, suitable and safe means for alighting from their trains. *Stewart* v. *International, etc., R. R. Co.*, 53 Tex. 289; S. C., 37 Am. Rep. 753; *McDonald* v. *Chicago, etc., R. R. Co.*, 26 Iowa, 124; *Patten* v. *Chicago, etc., R. W. Co.*, 32 Wis. 524; *Osborn* v. *Union Ferry Co.*, 53 Barb. 629; *Imhoff* v. *Chicago, etc., R. W. Co.*, 20 Wis. 344; *Martin* v. *G. N. R. W. Co.*, 16 C. B. 179; *Nicholson* v. *Lancashire, etc., R. W. Co.*, 3 Hurlst. & C. 534; *Caterham R. W. Co.* v. *London, etc., R. W. Co.*, 1 C. B. N. S. 410; Shearman & Redf. Neg., sec. 275; Hutchinson Carriers, sec. 516; Redfield Carriers, 514; *Foy* v. *London, etc., R. W. Co.*, 18 C. B. N. S. 225; Angell Carriers, 221 n.; Wharton Neg., secs. 652, 653. I think our own cases approve this doctrine; that of *The Jeffersonville, etc., R. R. Co.* v. *Riley*, 39 Ind. 568, certainly does, for it cites with unqualified commendation *McDonald* v. *Chicago, etc., R.*

*R. Co., supra.  The Columbus, etc., R. W. Co.* v. *Farrell,* 31 Ind. 408, recognizes the correctness of this doctrine.

A passenger has a right to presume that a railroad company has performed the duty imposed upon it by law.  No man who reasonably acts upon the presumption that a railroad company, whose passenger he is, has done its duty, can be deemed guilty of negligence in so acting.  It would be monstrous to require a passenger to ascertain before acting whether a law-enjoined duty had been performed.

The complaint shows that it was not negligence to step from the appellant's train.  It is indeed not in itself negligence to get off a slowly moving train.  *Kelly* v. *Hannibal, etc., R. R. Co.,* 70 Mo. 604; *Doss* v. *Missouri, etc., R. R. Co.,* 59 Mo. 27; S. C., 21 Am. R. 371.  But in the present case the confessed allegations of the complaint show that if the appellant had done its duty, by providing suitable means for alighting from its train, the appellee could have alighted in perfect safety. I borrow, as fitting, glove-tight, this case, the language of this court in *The Jeffersonville, etc., R. R. Co.* v. *Hendricks,* 41 Ind. 48: " The allegation above, admitted by the demurrer to be true, is that the motion of the train was so far checked that deceased could safely leave the same.  If she could safely leave, so far as any risk from the motion of the train was concerned, then she ran no risk, and it was not negligence on her part to make the attempt.  It would be a contradiction of terms to say that it was negligence on her part to undertake to do what she could safely do."

In the case at bar, the complaint shows not only that the appellee could have got off the train in safety, but it also shows that he did get off under the order of the conductor, and that, entirely relying on his instructions, he stepped off said train as directed.  Where a passenger leaves a train in obedience to the order of the conductor, and under his directions and instructions, he is not guilty of contributory negligence.  This is so, even though the act be apparently attended with some peril; but here the direct showing is that it was not at all

dangerous. I believe in the wisdom, the justice and the policy of the doctrine laid down in the opinion of FULLERTON, J., in *McIntyre* v. *New York Central R. R. Co.*, 37 N. Y. 287, and I think I may safely say that all the well considered cases approve it. Said this learned Judge, in speaking of the duty of the carrier to passengers : "If, in discharging that duty, they required her" (the plaintiff's intestate) "to perform an act which was perilous in itself, and in doing which she lost her life, the negligence, if any, which that act involved, should be imputed to the company alone. The rule that contributory negligence will prevent a recovery, * ought not to be applied to such a case. It would seem to be manifestly unjust to characterize as negligence the act of yielding obedience, under such circumstances, to the requirements of the party inflicting the injury, and to hold, as between the parties themselves, that it should deprive the party injured of all legal redress." There are many well considered cases sustaining this doctrine. *Siner* v. *Great Western R. W. Co.*, L. R. 3 Exch. 150 ; *Pennsylvania R. R. Co.* v. *McCloskey's Adm'r*, 23 Pa. St. 526 ; *Chicago, etc., R. R. Co.* v. *Randolph*, 53 Ill. 510 ; S. C., 5 Am. R. 60 ; *Lambeth* v. *N. C. R. R. Co.*, 66 N. C. 494 ; S. C., 8 Am. R. 508 ; *Filer* v. *N. Y. C. R. R. Co.*, 49 N. Y. 47 ; *Georgia, etc., Co.* v. *McCurdy*, 45 Ga. 288; S. C., 12 Am. Rep. 577 ; *Bridges* v. *The North London R. W. Co.*, L. R. 6 Q. B. 377. I confess my inability to see any distinction between this case and that of *Pennsylvania Co.* v. *Hoagland*, 78 Ind. 203. In that case it was said : "The conductor and brakemen, in charge of the passenger train, were the agents and representatives of the appellant ; and the said Hattie E., as a passenger under their charge, had the right to rely implicitly upon their statements to her and in her hearing." The rule has been extended to the case of a trespasser. *Benton* v. *C. R. I. & P. R. Co.*, 55 Iowa, 496. It is applied to cases where a traveller undertakes to cross a railroad track by the direction of the company's servant. *Bayley* v. *Eastern R. R. Co.*, 125 Mass. 62.

All that any complaint need do is to affirmatively show

that the plaintiff acted with ordinary prudence.    It was prudent for the appellee to presume that there was a proper place for alighting; it was prudent for him to attempt to alight where there was no risk, and it was also prudent for him to obey the directions of the conductor; and as the complaint shows that he did act upon this presumption, and also shows that if the company had done its duty there would have been neither injury nor risk, and shows further that he did obey the directions of the conductor, it does, in my opinion, clearly show that he acted with ordinary prudence.

The complaint not only shows the facts just enumerated, but it also shows, and in no uncertain manner, that the injury was attributable solely to the negligence of the company, in requiring its passenger to alight upon an uneven piece of ground, which cast him under the wheels of the train.    The cause, and the sole cause, of the injury being shown, the hypothesis of fault on appellee's part is completely excluded. But, even more than this, it is directly averred that what he did do was done under the directions and instructions of the company, and, if it was negligent to do the act, it was the carrier, and not the passenger, who was negligent.    I can not conceive a case where facts could more clearly prove due care and reasonable prudence.

WORDEN, J.—While I may not concur with all that is said by Commissioner Franklin in the opinion prepared by him, in this case, I am of opinion that the third paragraph of the complaint was insufficient, and, therefore, that the demurrer to it should have been sustained.

The paragraph has no general averment that the plaintiff was free from contributory negligence.

Assuming that under the circumstances he was guilty of no negligence in alighting from the train at the time he did, and that he had a right to suppose a suitable platform had been provided, it still does not appear that he alighted in a reasonably prudent or careful manner.    There is no averment that

he exercised any care or prudence in his manner of alighting, or guarded in the least against any injury he might receive in doing so. The circumstances that it was dark, the wind blowing and the rain falling, did not relieve him from the necessity of exercising reasonable care to avoid injury in alighting. From all that appears, his negligent and careless manner of alighting may have contributed to the injury, although no platform had been provided.

WOODS, J.—While concurring in the general scope of the principal opinion, I concur fully in the ground on which WORDEN, J., places the case.